**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JACQUELINE A. COTE, on behalf of herself and others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>WAL-MART STORES, INC.,<br><br>        Defendant. | **No.  15 Civ. 12945 (WGY)** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**<u>APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES</u>**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.     The Percentage Method Is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the First Circuit.......................................................................... 2

     A.     All of the Factors Used by Courts in this Circuit to Determine the Fairness of a Common Fund Award Strongly Support a Finding That the Requested Fee of 25 Percent of the Common Fund is Reasonable. .................................................... 5

          1.     The Size of the Fund and the Number of Persons Benefitted................................5

          2.     The Skills, Experience, and Efficiency of the Attorneys Involved........................7

          3.     The Complexity and Duration of the Litigation ......................................................9

          4.     The Risks of the Litigation ..................................................................................12

          5.     The Amount of Time Devoted to the Case by Class Counsel ..............................14

          6.     Awards in Similar Cases......................................................................................16

          7.     Public Policy Considerations ...............................................................................17

          8.     The Endorsement of Lead Plaintiff and the Reaction of the Settlement Class......18

II.     Class Counsel Are Entitled to Reimbursement of Their Costs......................................... 18

CONCLUSION.................................................................................................................... 19

## TABLE OF AUTHORITIES

CASES                                                                                                PAGE(S)

*Ballinger v. Advance Magazine Publishers, Inc.*,
   No. 13 Civ. 4036, 2014 WL 7495092 (S.D.N.Y. Dec. 29, 2014) ........................................... 8

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................................................ 15

*Bennett v. Roark Capital Grp., Inc.*,
   No. 09 Civ. 00421, 2011 WL 1703447 (D. Me. May 4, 2011) ................................................. 9

*Bezdek v. Vibram USA Inc.*,
   79 F. Supp. 3d 324 (D. Mass. 2015) ........................................................................... 8, 18, 19

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .................................................................................................................. 2

*Boyajian v. California Prods. Corp.*,
   No. 10 Civ. 11849, 2013 WL 3828804 (D. Mass. July 9, 2013) ........................................... 16

*Bussie v. Allamerica Fin. Corp.*,
   No. 97 Civ. 40204, 1999 WL 342042 (D. Mass. May 19, 1999) ............................................ 3

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ................................................................................................ 2

*Deposit Guar. Nat.'l Bank v. Roper*,
   445 U.S. 326 (1980) ................................................................................................................ 17

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
   989 F. Supp. 375 (D. Mass. 1997) ........................................................................................... 3

*Evans v. Ga. Reg'l Hosp.*,
   850 F.3d 1248 (11th Cir. 2017) ............................................................................................... 6

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ........................................................................................... 17

*Gill v. OPM*,
   699 F. Supp.2d 374 (D. Mass. 2010) ....................................................................................... 8

*Goodridge v. Dep't of Pub. Health*,
   798 N.E.2d 941 (Mass. 2003) .................................................................................................. 8

*Grace v. Ludwig*,
   484 F.2d 1262 (2d Cir. 1973) ................................................................................................. 17

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................................................. 6

*Hermida v. Archstone*,
   950 F. Supp. 2d 298 (D. Mass. 2013) ..................................................................... 3

*Higgins v. New Balance Athletic Shoe, Inc.*,
   194 F.3d 252 (1st Cir. 1999) .................................................................................... 7

*Hill v. State St. Corp.*,
   No. 09 Civ. 12146, 2015 WL 127728 (D. Mass. Jan. 8, 2015) ......................... *passim*

*Hively v. Ivy Tech Cmty. Coll. of Indiana*,
   _ F.3d _, 2017 WL 1230393 (7th Cir. Apr. 4, 2017) ............................................ 6

*Hochstadt v. Boston Sci. Corp.*,
   708 F. Supp. 2d 95 (D. Mass. 2010) ...................................................................... 12

*Houser v. Pritzker*,
   28 F. Supp. 3d 222 (S.D.N.Y. 2014) ....................................................................... 8

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
   No. 09 Civ. 2067, 2014 WL 4446464 (D. Mass. Sept. 8, 2014) ...................... 13, 14

*In re Checking Account Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) .................................................................... 8

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014) ...................................................................... 15

*In re Computron Software, Inc.*,
   6 F. Supp. 2d 313 (D.N.J. 1998) ............................................................................. 7

*In re Fidelity/Micron Sec. Litig.*,
   167 F.3d 735 (1st Cir. 1999) ................................................................................... 18

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................................. 8

*In re Ikon Office Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ............................................................................... 7

*In re Lupron Mktg. & Sales Practices Litig.*,
   No. 01 Civ. 10861, 2005 WL 2006833 (D. Mass. Aug. 17, 2005) .................. 5, 9, 12

*In re Neurontin Mktg. & Sales Practices Litig.*,
   58 F. Supp. 3d 167 (D. Mass. 2014) ...................................................................... 16

iv

*In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
   982 F.2d 603 (1st Cir. 1992)...................................................................................... 2

*In re Puerto Rican Cabotage Antitrust Litig.*,
   815 F. Supp. 2d 448 (D.P.R. 2011)...................................................................... 5, 6, 7

*In re Relafen Antitrust Litig.*,
   231 F.R.D. 52 (D. Mass. 2005)........................................................................ 3, 4, 15

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
   56 F.3d 295 (1st Cir. 1995)................................................................................ 2, 3, 4

*In re TJX Companies Retail Sec. Breach Litig.*,
   584 F.Supp.2d 395 (D.Mass.2008) ........................................................................ 4, 5

*In re Vitamins Antitrust Litig.*,
   No. MDL 1285, 2001 WL 34312839 (D.D.C. July 16, 2001)...................................... 8

*In re Volkswagen & Audi Warranty Extension Litig.*,
   692 F.3d 4 (1st Cir. 2012)........................................................................................ 2, 3

*Kingsborough v. Sprint Commc'ns Co., L.P.*,
   No. 14 Civ. 12049, 2015 WL 1605506 (D. Mass. Apr. 8, 2015) ............................ 16

*Lichtenstein v. Consol. Servs. Grp., Inc.*,
   173 F.3d 17 (1st Cir. 1999)........................................................................................ 3

*Mazola v. May Dep't Stores Co.*,
   No. 97 Civ. 10872, 1999 WL 1261312 (D. Mass. Jan.27, 1999) ............................ 16

*Medoff v. CVS Caremark Corp.*,
   No. 09 Civ. 554, 2016 WL 632238 (D.R.I. Feb. 17, 2016) ........................................ 5

*Obergefell v. Hodges*,
   135 S. Ct. 2584 (2015)............................................................................................... 8

*Oncale v. Sundowner Offshore Serv., Inc.*,
   523 U.S. 75 (1998).................................................................................................... 7

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)................................................................................................. 17

*Roberts v. TJX Cos., Inc.*,
   No. 13 Civ. 13142, 2016 WL 8677312 (D. Mass. Sept. 30, 2016)............................ 7

*Scott v. Clarke*,
   61 F. Supp. 3d 569 (W.D. Va. 2014) ........................................................................ 8

*Scovil v. FedEx Ground Packaging Sys., Inc.*,
    No. 10 Civ. 515, 2014 WL 1057079 (D. Me. Mar. 14, 2014) .................................................. 16

*Serrano v. Chicken-Out Inc.*,
    209 F. Supp. 3d 179 (D.D.C. 2016) ........................................................................................... 8

*Sewell v. Bovis Lend Lease, Inc.*,
    No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ............................................ 15

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) ..................................................................................................... 2

*Sylvester v. CIGNA Corp.*,
    401 F. Supp. 2d 147 (D. Me. 2005) ............................................................................................ 9

*Taft v. Ackermans*,
    No.  02 Civ. 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ................................................ 7

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .................................................................................................. 15

*Yuzary v. HSBC Bank USA, N.A., No.*,
    No. 12 Civ. 3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ............................................... 19

## INTRODUCTION

In connection with Plaintiff Jacqueline Cote's ("Cote") Motion for Final Approval of Class Action Settlement ("Motion for Final Approval"), filed simultaneously with this motion,[1] Class Counsel, GLBTQ Legal Advocates & Defenders ("GLAD"), Outten & Golden LLP ("O&G"), Arnold & Porter Kaye Scholer LLP ("APKS"), and the Washington Lawyers' Committee for Civil Rights and Urban Affairs ("WLC"), respectfully move for an award of attorneys' fees in the amount of $1.875 million or 25 percent of the Class Settlement Amount and $25,285.04  in costs that Class Counsel incurred in successfully prosecuting and settling this action.

Based on the well-established law of this Circuit, the Court should grant Class Counsel's request for an award of 25 percent of the common fund obtained in this case plus reimbursement of expenses.  The percentage of the fund method is the preferred way to award attorneys' fees in a common fund action like this one.  The requested percentage is well within the range of fee awards in this and other Circuits, and all the factors that courts use to assess the reasonableness of a fee award show that the requested fee is reasonable and should be approved.  The requested fee award is particularly reasonable due to the risks that Class Members faced on liability and certification.  Furthermore, under the Settlement Agreement Class Members will receive final payments that are greater than their out-of-pocket costs or the value of the health care benefits they were denied due to the practice challenged in this action.

Class Counsel's efforts to date have been without compensation, and their entitlement to fees or costs has been wholly contingent upon the result achieved.  Romer-Friedman Decl. ¶ 78. For the reasons set forth below, Class Counsel respectfully submit that the attorneys' fees and

---

[1]     For a detailed account of the factual and procedural background of this case, Class Counsel refer the Court to the Memorandum of Law in Support of Plaintiff's Motion for Final Approval.

expense reimbursements they seek are fair and reasonable under the applicable legal standards,

and should be awarded in light of the contingency risk undertaken and the result achieved.

## **ARGUMENT**

**I.      The Percentage Method Is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the First Circuit.**

As the First Circuit has confirmed, the common fund method of awarding attorneys' fees

applies "where attorneys seek compensation from a discernable pot of money won by the

plaintiffs." *In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4, 16 (1st Cir. 2012)

(citing *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d

295, 305 (1st Cir. 1995)).[2]  In a class action where a common fund has been produced due to

class counsel's legal services, the First Circuit has held that the preferred method to award

attorneys' fees is the "percentage of fund (POF) method." *In re Thirteen Appeals*, 56 F.3d at

306-08.  Here, the Settlement Agreement establishes a common fund of $7.5 million.  ECF No.

54-1 (Settlement Agreement) §§ 2.4, 5.1, 5.2 ("Settlement" or "Agmt.").

"In complex litigation—and common fund cases, by and large, tend to be complex—the

POF approach is often less burdensome to administer than the lodestar method." *In re Thirteen*

*Appeals*, 56 F.3d at 307 (citing *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1268 (D.C. Cir.

1993)).  Rather than reviewing voluminous time records, "the POF method permits the judge to

focus on 'a showing that the fund conferring a benefit on the class resulted from' the lawyers'

efforts." *Id.* (quoting *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir.

1991)).  The $7.5 million common fund that the Settlement Agreement establishes for the class is

---

[2]      "In its paradigmatic formulation, the common fund doctrine permits . . . a person preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including counsel fees, from the fund itself, or alternatively, from the other beneficiaries." *In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606 (1st Cir. 1992) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

a "discernable pot of money won by the plaintiffs." *In re Volkswagen*, 692 F.3d at 16 (citing *In re Thirteen Appeals*, 56 F.3d at 305). This scenario is in contrast to a situation where "each [aggrieved individual] was represented by separate counsel," and each reached a separate settlement, presumably paying his lawyer's fees from his respective share of the settlement. *Lichtenstein v. Consol. Servs. Grp., Inc.*, 173 F.3d 17, 24-25 (1st Cir. 1999) (finding no common fund under such circumstances).

As a result, this Court and other courts in the First Circuit have recognized that attorneys' fees should be calculated based on the percentage of the fund method in cases involving a common fund. For example, in *In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) (Young, J.), this Court found that the percentage of the fund method was the most appropriate way to calculate attorneys' fees, notwithstanding a class objector's argument that the lodestar method should be applied. *Id.* at 77-79. In so holding, this Court recognized that the percentage of the fund method constitutes the "prevailing praxis," and that, "[c]ontrary to popular belief it is the lodestar method, not the [percentage of fund] method, that breaks from precedent." *Id.* at 77-78 (quoting *In re Thirteen Appeals*, 56 F.3d at 305); *see also Hermida v. Archstone*, 950 F. Supp. 2d 298, 308 n.2 (D. Mass. 2013) (Young, J.) ("The common fund doctrine is founded on the equitable principle that those who have profited from litigation should share its costs.") (quoting *In re Thirteen Appeals*, 56 F.3d at 305 n.6) (internal quotation marks omitted); *Bussie v. Allamerica Fin. Corp.*, No. 97 Civ. 40204, 1999 WL 342042, at *2 (D. Mass. May 19, 1999) (stating that the percentage of the fund method "'more appropriately aligns the interests of the class with the interests of class counsel,'" and further "encourages efficiency and avoids the disincentive to settle cases early created by the lodestar method") (quoting *Duhaime v. John*

*Hancock Mut. Life Ins. Co.,* 989 F. Supp. 375, 377 (D. Mass. 1997), and citing *In re Thirteen Appeals*, 56 F.3d at 307)) (internal quotation marks omitted).

Here, the Class will receive 100 percent or nearly all[3] of the Net Settlement Fund[4] and none of $7.5 million Class Settlement Amount will revert to Walmart, obviating the concerns this Court articulated in *In re TJX Companies Retail Sec. Breach Litig.* 584 F.Supp.2d 395, 410 (D.Mass.2008) ("when confronted with reversionary common fund or claims-made settlements, [this Court] will award attorneys' fees *by reference to the value of benefits actually put in the hands of the class members.*"); Romer-Friedman Decl. ¶ 60.  Any amount of the Net Settlement Fund that is not distributed to the Class will be *de minimis* (*i.e.*, any uncashed checks that are mailed to Class Members), and will be applied to a *cy pres* award.  Romer-Friedman Decl. ¶ 42. Even a *de minimis cy pres* award will benefit the class, because the *cy pres* designees are organizations that serve the lesbian, gay, bisexual, transgender, and queer ("LGBTQ") community.  These organizations indirectly benefit Class Members, who allege that Walmart discriminated against gay and lesbian employees who had same-sex spouses.  *See In re Relafen,* 231 F.R.D. at 82-83 (approving counsel's fees of 33 1/3 percent of the fund, which included a $500,000 *cy pres* award, and noting that the *cy pres* designee provided a benefit to the class).

---

[3]     As set forth in detail in the Memorandum of Law in Support of Plaintiff's Motion for Final Approval, after the Court granted Preliminary Approval of the Settlement, the parties executed an amendment to the proposed Settlement Agreement that increases the maximum amount that each Class Member may obtain from the Net Settlement Amount, ensuring that all (or nearly all) of the Net Settlement Amount will be paid to Class Members and will not be distributed to the *cy pres* designee.

[4]     The Net Settlement Amount means the portion of the Class Settlement Amount remaining after the subtraction of: (a) attorneys' fees and expenses approved and awarded by the Court; (b) the service payment approved and awarded by the Court; (c) notice and administration costs; and (d) any increase in the employer's share of payroll taxes that results from the parties' amendment to the Settlement that increases the amount of final payments to Class Members. Agmt. § 2.18, 5.3.1; Ex. 2 (Amendment to the Settlement Agreement) ("Am. Agmt.").

**A.      All of the Factors Used by Courts in this Circuit to Determine the Fairness of a Common Fund Award Strongly Support a Finding That the Requested Fee of 25 Percent of the Common Fund is Reasonable.**

To determine the reasonableness of the percentage of the common fund requested by class counsel, courts in this Circuit have considered at least seven factors, including

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any.

*Hill v. State St. Corp.*, No. 09 Civ. 12146, 2015 WL 127728, at *17 (D. Mass. Jan. 8, 2015) (collecting cases) (quoting *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 458 (D.P.R. 2011)); *accord Medoff v. CVS Caremark Corp.*, No. 09 Civ. 554, 2016 WL 632238, at *8 (D.R.I. Feb. 17, 2016) (quoting *In re Lupron Mktg. & Sales Practices Litig.*, No. 01 Civ. 10861, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005)).  Courts have also considered the support of the named plaintiffs and the reaction of the class to the settlement.  *See Hill*, 2015 WL 127728, at *19-20; *accord In re TJX Companies*, 584 F. Supp. 2d at 401 (considering "the reaction of the class members to the settlement and proposed attorneys' fees" as one of six relevant factors).

Here, all of these factors weigh strongly in favor of finding that the requested fee award—25 percent of the common fund—is reasonable.

**1.      The Size of the Fund and the Number of Persons Benefitted**

The size of the common fund—$7.5 million—constitutes a substantial settlement.  Courts in this circuit have recognized that "the net dollars and cents results achieved by counsel for their clients is often the most influential factor in assessing the reasonableness of any attorneys' fee

award." *In re Puerto Rican Cabotage*, 815 F. Supp. 2d at 458 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983)).

The Settlement Fund is an outstanding result for the Class Members.  Based on the number of Long and Short Form Claims that have been filed, Class Counsel estimate that all approved Long Form Claimants will receive final payments that are 1.5 times their spouses' out-of-pocket health costs during the Class Period (or 3.0 times their spouses' out-of-pocket health costs in the case of those who had $60,000 or greater costs during the Class Period), and all approved Short Form Claimants will receive final payments that are greater than the value of the spousal health care benefits they were denied or the out-of-pocket costs they incurred during the Class Period.  Romer-Friedman Decl. ¶ 45.  In addition, this Settlement provides important programmatic relief by ensuring that Walmart will not revert to its prior policy of excluding same-sex spouses from its health insurance plan.  Agmt. § 6.1.

This substantial recovery is particularly meaningful given that the dispositive legal question in this case—whether Walmart engaged in unlawful sex discrimination under federal and state law by denying benefits to employees due to the sex of their spouses—is somewhat unsettled.  Although the Seventh Circuit recently reversed its prior precedent on the question and "conclude[d] that discrimination on the basis of sexual orientation is a form of sex discrimination," *Hively v. Ivy Tech Cmty. Coll. of Indiana*, __ F.3d __, 2017 WL 1230393, at *1, *4 (7th Cir. Apr. 4, 2017) (adopting the "position that Title VII's prohibition against sex discrimination encompasses discrimination on the basis of sexual orientation"), other circuits continue to maintain the opposite conclusion.  *See Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1254-55 (11th Cir. 2017) (recognizing that "[d]iscrimination based on failure to conform to a gender stereotype is sex-based discrimination," but holding that "binding precedent forecloses" a

holding that Title VII prohibits "discrimination because of [an employee's] sexual orientation"). The law is still unsettled in this circuit.[5]

The number of people benefitting from the case is equally substantial.  As of the claim form filing deadlines, 309 short-form claims and 17 long-form claims have been filed with the Settlement Administrator.[6]

### 2.       The Skills, Experience, and Efficiency of the Attorneys Involved

In considering the quality of representation, courts in the First Circuit consider, *inter alia*, counsel's competence, reputation, commitment to their clients' interests, and experience in litigating similar matters.  *See, e.g.*, *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d at 459 (noting counsel's integrity, ingenuity, experience, reputation and devotion to the interests of their clients); *Roberts v. TJX Cos., Inc.*, No. 13 Civ. 13142, 2016 WL 8677312, at *11 (D. Mass. Sept. 30, 2016) (highlighting counsel's competence and relevant litigation experience).  These considerations are similar to those assessed by other federal courts in evaluating attorney performance.  *See In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (measuring counsel's performance by "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel") (quoting *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998)) (internal quotation marks omitted); *accord Taft v. Ackermans*,

---

[5]       Although the First Circuit has not yet squarely decided these issues, Plaintiff believes it has made clear that LGBTQ individuals are not precluded from asserting sex discrimination claims under federal law.  *See Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 261 n.4 (1st Cir. 1999) (discussing *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75 (1998)).
[6]       A number of claim forms were filed after the claim deadline.  Ex. 3 (Shawver Decl.) ¶ 11.  The Parties are reviewing these claims and will provide the Court with an update as to how they will be processed prior to the Final Fairness Hearing.  Romer-Friedman Decl. ¶ 37.

No.  02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) ("[C]ourts review, among

other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit")

(internal quotation marks omitted) (citing *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D.

436, 467 (S.D.N.Y. 2004)).

Here, the quality of representation supports Class Counsel's request.  Class Counsel have

substantial experience prosecuting large-scale class and collective actions, LGBTQ rights, civil

rights, and complex litigation.[7]  *See Hill*, 2015 WL 127728, at *17 (reaching similar finding

regarding other lawyers and noting that plaintiffs' counsel's "experience and expertise

contributed to the achievement of the [s]ettlement"); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d

324, 350 (D. Mass. 2015) (finding skill of lawyers "nationally known for and greatly

experienced in representing plaintiffs" in class action lawsuits weighed in favor of 25 percent

---

[7]     *See Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036, 2014 WL
7495092, at *7 (S.D.N.Y. Dec. 29, 2014) (appointing O&G as Class Counsel, explaining that
"[b]ased on the firm's performance before me in this and other cases and its work in the
foregoing and other cases, I have no question that it will prosecute the interests of the class
vigorously"); *Houser v. Pritzker*, 28 F. Supp. 3d 222, 248 (S.D.N.Y. 2014) (appointing O&G,
among others, class counsel and noting that they "bring to the case a wealth of class action
litigation experience, much of which relates to claims of employment and race discrimination");
*Obergefell v. Hodges*, 135 S. Ct. 2584, 2591 (2015) (requiring that marriage equality must be
recognized in every state and noting that GLAD argued for the petitioner); *Gill v. OPM*, 699 F.
Supp.2d 374 (D. Mass. 2010) *aff'd sub nom.*, *Mass. v. United States HHS*, 682 F.3d 1 (1st Cir.
2012) (striking down Section 3 of the Defense of Marriage Act (DOMA) as unconstitutional in
case litigated by GLAD); *Goodridge v. Dep't of Pub. Health*, 798 N.E.2d 941 (Mass. 2003)
(holding that Massachusetts must provide marriage equality to same-sex couples in case litigated
by GLAD); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1363 (S.D. Fla.
2011) (APKS attorneys "displayed an exceptional amount of skill in litigating on behalf of their
client"); *In re Vitamins Antitrust Litig.*, No. MDL 1285, 2001 WL 34312839, at *11 (D.D.C. July
16, 2001) (finding that APKS's performance and quality as opposing counsel weighed in favor
of awarding requested fee); *Serrano v. Chicken-Out Inc.*, 209 F. Supp. 3d 179 (D.D.C. 2016)
(finding that "the skill, experience, and reputation of the [WLC], and its staff . . . are
substantial") (internal quotation marks omitted); *Scott v. Clarke*, 61 F. Supp. 3d 569, 590 (W.D.
Va. 2014) (recognizing WLC as a "well-known public interest legal services organization[] with
substantial experience with respect to and involvement in civil rights litigation, including class
actions").

common fund fee).  Class Counsel deployed their experience in a case that presented a range of challenging substantive and procedural issues.  Class Counsel's skill and experience were directly responsible for the favorable settlement and weigh in favor of granting the requested fees.

The Court has already "praise[d]" the "exemplary arm's-length dispute resolution" through which Class Counsel has reached a Settlement Agreement on behalf of the Class.  ECF No. 64 (Transcript of Hearing Before Judge William G. Young) (Dec. 16, 2016) at 8 ("Preliminary Approval Tr.") at 3:23-25.  Class Counsel's skills and experience therefore militate in favor of awarding the requested fees.

### 3.    The Complexity and Duration of the Litigation

With respect to the complexity and duration of the litigation, courts consider the "time and labor required" of counsel, as well as "the novelty and difficulty of the questions involved and the skill requisite to properly perform the legal services."  *Bennett v. Roark Capital Grp., Inc.*, No. 09 Civ. 00421, 2011 WL 1703447, at *1 (D. Me. May 4, 2011) (citing *Sylvester v. CIGNA Corp.,* 401 F. Supp. 2d 147, 151 (D. Me. 2005)); *see also In re Lupron Mktg. & Sales Practices Litig.*, No. 01 Civ. 10861, 2005 WL 2006833, at *4 (D. Mass. Aug. 17, 2005) (difficult and novel legal issues and "thorny issues of fact" weighed in favor awarding fees).

This class case presents novel Title VII questions.  As discussed above, the legal landscape over Title VII's protection of LGBTQ workers under Title VII's prohibition on sex discrimination was far from settled at the outset of this litigation, and it remains uncertain in many respects to this day.  *Supra* at (I)(A)(1).  Moreover, the case raised novel procedural issues related to class certification, since Walmart did not keep records on which employees had same-sex spouses during the Class Period.

9

Aside from asserting novel legal claims, Class Counsel aggressively litigated and mediated this case.  On July 14, 2015, Plaintiff filed this putative class action alleging that Walmart violated Title VII of the Civil Rights Act, the Equal Pay Act, and the Massachusetts Fair Employment Practices Law because Walmart did not offer spousal health insurance benefits to employees with same-sex spouses prior to January 1, 2014 ("Prior Policy").  ECF No. 1 ¶¶ 1-3, 74-92.  The Complaint alleged that Walmart violated these federal and state laws because Walmart's Prior Policy constituted a sex-based classification, sex-based stereotyping, and sex-based associational discrimination.  *Id.* ¶¶ 2, 41-43, 63, 76-78, 88-90.  On September 14, 2015, Walmart filed its Answer to the Complaint, acknowledging that "prior to January 1, 2014, other than in some states where coverage may have been available through HMOs, Walmart did not provide same-sex spousal health insurance benefits to its U.S. associates."  ECF No. 16. ¶ 37.  Walmart denied it was liable under federal or state law, *id.* ¶¶ 74-92, and raised a host of affirmative defenses.  *Id.* at pp. 14-17.

Discovery commenced on November 1, 2015, and the trial was scheduled for November 2016.  On October 28, 2015, the parties exchanged their initial disclosures.  Romer-Friedman Decl. ¶ 25.  In November 2015, the Parties served written discovery, including interrogatories, document requests, and requests for admission, and in January 2016, the Parties responded to those discovery requests.  *Id.* ¶ 26.

In responding to Plaintiff's discovery requests, Walmart produced, and Class Counsel reviewed, thousands of pages of documents about its health insurance plan from 2011 through 2016; hundreds of pages of personnel records regarding Plaintiff Cote; documents and information about prior charges that had been filed concerning the Prior Policy; and personnel information on approximately 1,200 Walmart employees who enrolled their same-sex spouses in

a Walmart medical, dental, or vision plan on or after January 1, 2014, the date that Walmart began providing spousal health insurance to employees' same-sex spouses. *Id.* ¶ 27. Walmart later supplemented its production, including producing information on certain costs related to providing health insurance benefits to the spouses of Walmart associates. *Id.* ¶ 28.

In early 2016, the parties agreed on a process to notify approximately 1,200 potential Class Members about the lawsuit and to obtain their consent to provide their contact information to Plaintiff's Counsel, which this Court approved on January 26, 2016. ECF No. 40 (Minute Order dated Jan. 26, 2016). Shortly thereafter, a notice administrator disseminated the notice to those 1,200 individuals. Romer-Friedman Decl. ¶ 29. More than 80 of the individuals returned forms consenting to have information about their health insurance benefits and their contact information disclosed to Plaintiff's counsel. *Id.* ¶ 30. In February and March 2016, Plaintiff's Counsel communicated with most of these individuals to document how they and their spouses were impacted by Walmart's Prior Policy and to estimate the Class's potential damages. *Id.* ¶ 31.

During this time, the Parties also worked to settle the class claims. On February 22, 2016, the Parties engaged in private mediation with an experienced labor and employment mediator, Mark Irvings, and on April 6 and April 28, 2016, the parties engaged in two further full-day mediation sessions with Mr. Irvings, after which the parties reached an agreement in principle. *Id.* ¶ 32. Between May 2016 and November 2016, the Parties' counsel exchanged numerous drafts of the Settlement Agreement, and developed a claims process, claim forms, and a proposed Class Notice. *Id.* ¶ 33. In developing Plaintiff's settlement proposals, Class Counsel: consulted with labor and health care economists; analyzed studies that shed light on the number of Class Members who may have incurred significant health care costs during the Class Period

and the average health care costs of American workers; and analyzed information Walmart produced on potential Class Members and information dozens of potential Class Members provided to Plaintiff's counsel.  *Id.* ¶ 59.

On December 2, 2016, the Parties executed a Settlement Agreement, Agmt. at 30, and Plaintiff moved for preliminary approval of the Settlement Agreement, ECF No. 50.  On December 22, 2016, this Court preliminarily approved the Settlement, and also approved and directed the dissemination of notice of class action settlement to the Settlement Class Members. ECF No. 64.

Given the substantial discovery that occurred and the detailed information the parties used to negotiate the Settlement, the parties clearly had "sufficient discovery . . . to make an intelligent judgment about settlement."  *Hochstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 107 (D. Mass. 2010).  Thus, the complexity and difficulty of the issues presented, and the intensity and effort with which Class Counsel litigated the case to settlement demonstrate the reasonableness of the requested fees.

**4.      The Risks of the Litigation**

Where "substantial risks of non-recovery" existed and class counsel "litigated the Action on a fully contingent basis and were exposed to the risk that they might obtain no compensation for their efforts on behalf of the class," courts favorably consider "this contingency risk in awarding attorneys' fees."  *Hill v. State St. Corp.*, No. 09 Civ. 12146, 2015 WL 127728, at *18 (D. Mass. Jan. 8, 2015) ("Many cases recognize that the risk [of non-payment] assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award.") (quoting *In re Lupron Mktg. & Sales Practices Litig.*, No. 01 Civ. 10861, 2005 WL 2006833, at *4 (D. Mass. Aug. 17, 2005)).

Here, there were numerous risks that could have resulted in Class Counsel receiving nothing for their work, and that could have caused some or all Class Members to receive nothing. As outlined above, the dispositive legal question in this case—whether Walmart engaged in unlawful sex discrimination under federal and state law by denying benefits to employees due to the sex of their spouses—is unsettled.  Walmart has denied that its pre-2014 policy of denying spousal health insurance benefits to employees with same-sex spouses is unlawful, and contests the propriety of class certification.  ECF No. 16 at 15-16.  If the case were further litigated, Plaintiff expects that Walmart would challenge Plaintiff's claims at every stage of the litigation, including at class certification, summary judgment, trial, and various pre- and post-trial appeals.

The risk of certifying a class was heightened here because Walmart did not keep records on which employees had same-sex spouses and thus could not identify with specificity which employees had been harmed by its Prior Policy.  In opposing class certification, Walmart would argue that most of the Class Members did not suffer any harm if they could not prove out-of-pocket medical expenses, that any damages should be offset if Class Members' spouses obtained health insurance through other means, and that determining damages would raise highly individualized issues.  *See id.* at 15-16.  While Plaintiff would dispute these arguments and argue further that there are readily accessible ways to determine Class Members' overall and individual damages—including by estimating the economic value of the health insurance benefits Class Members and their spouses were denied—further litigation could pose a risk on class certification and result in many, if not most, Class Members receiving a far smaller recovery than they stand to gain under the Settlement Agreement.  *See In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, No. 09 Civ. 2067, 2014 WL 4446464, at *7 (D. Mass. Sept. 8, 2014) ("plaintiffs

risked recovering significantly less than what their own expert estimated in damages if they proceeded to trial").

Furthermore, Walmart's affirmative defenses could eliminate or substantially reduce the relief that Class Members could receive, especially its timeliness defense. *Id.* at 14. As discussed in Plaintiff's Motion for Final Approval, Plaintiff and members of the Settlement Class faced serious risks with respect to the timeliness of their claims.

The $7.5 million monetary payment to the Class represents an outstanding recovery for the Class Members, given the major risks involved in this litigation, the significant individual payments they will receive, and the important programmatic relief that the Settlement provides by ensuring that Walmart will not revert to its prior policy of excluding same-sex spouses from its health plan. Given that every Class Member who filed a timely, approved claim form will receive payments that represent more than 100 percent of the estimated value of the benefits their spouses were denied or their actual out-of-pocket losses, this Settlement far exceeds the minimum standard for approval. *See In re Celexa*, 2014 WL 4446464, at *7 ("A settlement need not reimburse 100% of the estimated damages to class members in order to be fair").

## 5.   The Amount of Time Devoted to the Case by Class Counsel

Class Counsel have devoted a substantial amount of time to investigate, administratively exhaust, file, litigate, settle, and administer this class action. As described above, prior to mediation, Class Counsel reviewed and analyzed thousands of documents and other information about Walmart's Prior Policy, prior complaints and charges by other employees, personnel information on Plaintiff Cote, and certain health insurance cost information. Class Counsel also communicated with dozens of potential Class Members to understand how they were impacted by Walmart's Prior Policy and to evaluate the losses they could reasonably claim. Romer-

Friedman Decl. ¶ 58.   Class Counsel engaged in lengthy negotiations over the terms of the

Settlement and, in collaboration with Walmart's counsel, designed the notice and claims process

for the Settlement.  *Id.* ¶ 79.  Further, after the Court granted preliminary approval, Class

Counsel communicated regularly with the claims administrator to oversee the settlement

administration process and responded to numerous inquiries from Class Members.  *Id.* at ¶ 80.

Class Counsel expended approximately 1,467 hours of attorney, paralegal, and staff

member time to date.[8]  Romer-Friedman Decl. ¶¶ 81-82, Ex. 5; Declaration of Gary D. Buseck

("Buseck Decl.") ¶ 10; Declaration of Peter Grossi ("Grossi Decl.") ¶ 10; Declaration of

Matthew K. Handley ("Handley Decl.") ¶ 9.  These hours are reasonable for a complex class

case like this and were compiled from contemporaneous time records maintained by each

attorney, paralegal, and support staff participating in the case.  Romer-Friedman Decl.  ¶ 83;

Buseck Decl. ¶¶ 9-10; Grossi Decl. ¶¶ 9-11; Handley Decl. ¶¶ 9-10.

The requested fee is not based solely on time and effort already expended; rather, it is

also meant to compensate Class Counsel for time that will be spent administering the settlement

in the future.  *Id.* ¶ 84.  In Class Counsel's experience, overseeing the final steps of the

settlement process requires an ongoing commitment.  *See, e.g., In re Colgate-Palmolive Co.*

*ERISA Litig.*, 36 F. Supp. 3d 344, 347 (S.D.N.Y. 2014) (noting that time records submitted with

fee petitions "exclude[] time spent preparing and arguing the motion to approve the settlement

---

[8]     Class Counsel's request for 25 percent of the $7.5 million common fund—$1.875
million—is approximately 2.27 times their collective lodestar to date.  This request is reasonable.
*See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (approving a multiplier of
2.02 and collecting cases that approved multipliers of up to 8.9 times lodestar).  In fact, "[c]ourts
regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even
higher multipliers."  *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013)
(collecting cases); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002)
(listing nationwide class action settlements where multiplier ranged up to 8.5 times lodestar);
*Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *13 (S.D.N.Y. Apr.
16, 2012) ("Courts commonly award lodestar multipliers between two and six.").

and attorneys' fees, and time that will be spent administering the settlement"); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) ("Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund.").

6.      **Awards in Similar Cases**

The requested fee of 25 percent of the $7.5 million common fund is comparable to or less than fees that have been routinely awarded in similar cases. In fact, in cases seeking lost employee benefits, "contingent fees of one-third are common" and are "consistent" with settlements in the District of Massachusetts. *Scovil v. FedEx Ground Packaging Sys., Inc.*, No. 10 Civ. 515, 2014 WL 1057079, at *5 (D. Me. Mar. 14, 2014) (collecting district court opinions and approving a $1.93 million fee award that was one-third of the settlement); *Boyajian v. California Prods. Corp.*, No. 10 Civ. 11849, 2013 WL 3828804, at * 2-3 (D. Mass. July 9, 2013) (approving award of 30% of $1.925 million common fund and noting award is "consistent with awards in similar cases"); *Kingsborough v. Sprint Commc'ns Co., L.P.*, No. 14 Civ. 12049, 2015 WL 1605506, at *2 (D. Mass. Apr. 8, 2015) ("At 25% of the common fund, the fee and expense request [of nearly $600,000 in fees and $313,000 in costs of $2.4 million] is reasonable."); *see also Mazola v. May Dep't Stores Co.*, No. 97 Civ. 10872, 1999 WL 1261312, at *4 (D. Mass. Jan.27, 1999) ("[I]n this circuit, percentage fee awards range from 20% to 35% of the fund. This approach mirrors that taken by the federal courts in other jurisdictions.")).[9]

---

[9]      District courts in this Circuit commonly grant fee awards of between 20 percent and 33 percent. "An empirical study of federal class action fee awards in 2006 and 2007 found that nearly two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund," and in the First Circuit the mean and median awards were 27 percent and 25 percent, respectively. *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp.

### 7.      Public Policy Considerations

Public policy considerations support the requested fee to reward Class Counsel, who successfully challenged Walmart's policy of offering spousal health insurance benefits to employees with same-sex spouses.  Fee awards in civil rights cases serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discourage future misconduct of a similar nature.  *See Deposit Guar. Nat.'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980).

Class actions are an invaluable safeguard of public rights.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  Courts look with favor upon awarding attorneys' fees in class actions that "encourage the vigilance of private attorneys general to provide corporate therapy protecting the public investor who might otherwise be victimized."  *Grace v. Ludwig*, 484 F.2d 1262, 1267 (2d Cir. 1973).  An award of attorneys' fees ensures that "plaintiffs' claims [will] likely . . . be heard."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005).

In this case, public policy considerations weigh heavily in favor of awarding Class Counsel's requested fee.  As Plaintiff Cote's experience shows, equal and fair access to health insurance, regardless of the sex of an employee's spouse, may very well be a life or death issue.  In addition, this class action settlement breaks new ground.  To the knowledge of Class Counsel, this is the first class action brought on behalf of LGBTQ workers to be certified and settled, and hopefully the settlement of this action will inspire other LGBTQ workers to employ the class

---

3d 167, 172 (D. Mass. 2014) (citing Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811, 833–34, 836 (2010)).  The same study found that nationally similar percentages of common funds were awarded to class counsel in labor and employment cases—a mean of 28 percent and a median of 29 percent.  Fitzpatrick, 7 J. Empirical L. Stud. at 835.

action device to secure equal rights in the future.  Therefore, public policy considerations weigh in favor of awarding Class Counsel 25 percent of the fund.

### 8.    The Endorsement of Lead Plaintiff and the Reaction of the Settlement Class

Finally, the reasonableness of the requested fee is bolstered by the support of the Class Representative for the Settlement and the requested fee award.  *Hill*, 2015 WL 127728, at *19 ("The endorsement of the Lead Plaintiffs and the favorable reaction of the class both support approval of the requested fees.").  Here, the sole lead plaintiff, Class Representative Cote, has endorsed the Settlement as outstanding and supports the requested fee award, emphasizing the skill and commitment of Class Counsel and their willingness to take on a case for which the legal landscape is so uncertain.  Romer-Friedman Decl. ¶ 85.  While the Class received notice that Class Counsel would request attorneys' fees of up to 25 percent of the common fund plus reimbursement of their expenses, no Class Members have objected to any portion of the Settlement or Class Counsel's requested fee.  Ex. 3 (Shawver Decl.) ¶ 13.  No Class Members have opted out of the Settlement, *id.* ¶ 12, which supports the requested award.  *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 351 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015) ("overwhelmingly positive" reaction of class to settlement and "quite low number of opt-outs" weighed in favor of requested fee).

## II.    Class Counsel Are Entitled to Reimbursement of Their Costs.

Class Counsel request reimbursement of $25,921.20 in out-of-pocket litigation expenses. Romer-Friedman Decl. ¶¶ 86-87; Buseck Decl. ¶ 12; Grossi Decl. ¶ 13; Handley Decl. ¶ 11. "Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation."  *Hill*, 2015 WL 127728, at *20 (citing *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir.

1999)).

Here, Class Counsel's expenses were incidental and necessary to the representation of the Class.  Romer-Friedman Decl. ¶ 58.  They include filing fees, postage, transportation, working meals, printing, electronic research, consultant fees, and Plaintiff's share of the mediator's fees. Ex. 6 (O&G Costs Summary); Buseck Decl. ¶ 12; Grossi Decl. 13; Handley Decl. ¶ 11.  Such costs "are the types of expenses that are necessarily incurred in litigation of this type" and are "reasonable in light of the length and scope of this litigation."  *Hill*, 2015 WL 127728, at \*21; *Yuzary v. HSBC Bank USA, N.A*, No. 12 Civ. 3693, 2013 WL 5492998, at \*11 (S.D.N.Y. Oct. 2, 2013) (approving reimbursement of class counsel's expenses, including court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, expert fees, and plaintiffs' share of the mediator's fees, and finding that they were reasonable and had been incidental and necessary to the representation of the class).  As Class Counsel's costs are reasonable, the Court should approve them and order that Class Counsel be reimbursed for such expenses in addition to the attorneys' fees request.  *See Bezdek*, 79 F. Supp. 3d at 351-52.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court enter an Order awarding Class Counsel $1.875 million in attorneys' fees, which represents 25 percent of the $7.5 million common fund, and $25,285.04 in out-of-pocket litigation expenses.

Dated: April 28, 2017

Respectfully submitted,

JACQUELINE COTE

By her attorneys,

/s/ Peter Romer-Friedman
Peter Romer-Friedman (*pro hac vice*)

19

Peter Romer-Friedman (*pro hac vice*)
prf@outtengolden.com
Sally Abrahamson (*pro hac vice*)
sabrahamson@outtengolden.com
OUTTEN & GOLDEN LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001
(202) 847-4400

Juno Turner (*pro hac vice*)
jturner@outtengolden.com
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
(212) 245-1000

John A. Freedman (Bar No. 629778)
John.Freedman@aporter.com
Peter Grossi (*pro hac vice*)
Peter.Grossi@aporter.com
Sarah Warlick (*pro hac vice*)
Sarah.Warlick@aporter.com
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000

Gary Buseck (Bar No. 067540)
gbuseck@glad.org
Allison W. Wright (Bar No. 684753)
awright@glad.org
GLBTQ LEGAL ADVOCATES &
DEFENDERS
30 Winter Street, Suite 800
Boston, MA  02108
(617) 426-1350

Matthew K. Handley (*pro hac vice*)
Matthew_Handley@washlaw.org
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN
AFFAIRS
11 Dupont Circle, NW, Suite 400
Washington, DC 20036
(202) 319-1000

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 27th of April, 2017, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Peter Romer-Friedman
Peter Romer-Friedman (*pro hac vice*)
prf@outtengolden.com
OUTTEN & GOLDEN LLP
601 Massachusetts Ave. NW
Second Floor West
Washington, DC 20001
(202) 847-4400